**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JESSICA MACARAEG, KAREN SANDERS and JACQUELYN S. HARRELL, individually and on behalf of a class of similarly situated individuals, | CIVIL ACTION |
| Plaintiff, | CASE NO. 1:20-cv-3209 |
| v. | JURY TRIAL DEMANDED |
| MRS BPO, LLC, d/b/a MRS ASSOCIATES, INC., | |
| Defendant. | |

## CLASS ACTION COMPLAINT

NOW COME Plaintiffs JESSICA MACARAEG, KAREN SANDERS and JACQUELYN S. HARRELL by and through their undersigned attorney, James C. Vlahakis, and pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") submit the following Class Action Complaint against Defendant MRS ASSOCIATES, LLC as follows:

### I. Parties, Jurisdiction and Venue

1.     Plaintiffs JESSICA MACARAEG, KAREN SANDERS and JACQUELYN S. HARRELL have file this putative Class Action Complaint pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.*, against  Defendant MRS ASSOCIATES, LLC.

2.     Plaintiff JESSICA MACARAEG is a citizen and resident of the State of California.

3.     KAREN SANDERS is a citizen and resident of the State of Illinois and resides in this judicial district.

1

4. Plaintiff JACQUELYN S. HARRELL is a citizen and resident of the State of Michigan.

5. Defendant MRS ASSOCIATES, LLC ("MRS") is a "debt collector" as the phrase is defined in Section 1692(a)(6) of the FDCPA.

6. MRS is a wholly owned subsidiary of MRS Associates, Inc.

7. MRS is a limited liability corporation organized under the laws of New Jersey.

8. Subject matter jurisdiction is conferred upon this Court by Section 1692k(d) of the FDCPA and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

9. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff Karen Sanders resides in this District to the extent Defendant Convergent transmitted a collection letter to Ms. Sanders in this jurisdiction.

## II. Summary and Purpose of the FDCPA

10. The introduction section of the FDCPA contains "Congressional findings" and a "declaration of purpose". 15 U.S.C. § 1692. In particular, § 1692 states as follows:

**(a) Abusive practices**

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

**(b) Inadequacy of laws**

Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

**(c) Available non-abusive collection methods**

Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

**(d) Interstate commerce**

2

> Abusive debt collection practices are carried on to a substantial
> extent in interstate commerce and through means and
> instrumentalities of such commerce. Even where
> abusive debt collection practices are purely intrastate in
> character, they nevertheless directly affect interstate commerce.
>
> **(e) Purposes**
>
> It is the purpose of this subchapter to eliminate
> abusive debt collection practices by debt collectors, to insure that
> those debt collectors who refrain from using
> abusive debt collection practices are not competitively
> disadvantaged, and to promote consistent State action to
> protect consumers against debt collection abuses.

11.     One purpose of the FDCPA was to address "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

12.     In enacting the FDCPA, Congress determined that "[a]busive debt collection practices contribute to" societal harms, include increasing "the number of personal bankruptcies," "marital instability," "the loss of jobs," and "invasions of individual privacy." 15 U.S.C. § 1692(a).

13.     Congress determined that "[e]xisting laws … are inadequate to protect consumers" and that "[m]eans other misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. §§ 1692(b)-(c).

14.     Accordingly, the FDCPA generally focuses on a debt collector's conduct without regard for the validity of the alleged debt because "[m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. § 1692(c).

15.     The FDCPA protects ethical collectors from being competitively disadvantaged. 15 U.S.C. § 1692(e).

### III.  Relevant FDCPA Definitions

16.     Section 1692a(3) of the FDCPA defines "consumer" to mean "any natural person obligated or allegedly obligated to pay any debt."

3

17.     Section 1692a(4) of the FDCPA defines the term "creditor" to mean "any person who offers or extends credit creating a debt or to whom a debt is owed[.]"

18.     Section 1692a(5) of the FDCPA defines the term "debt" to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes[.].

19.     Section 1692a(6) of the FDCPA defines the term "debt collector" to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

20.     Section 1692a(2) of the FDCPA defines the term "communication" to mean "the conveying of information regarding a debt directly or indirectly to any person through any medium."

21.     Section 1692e of the FDCPA states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

22.     Section 1692e(2)(A) of the FDCPA prohibits "[t]he false representation of...the character, amount, or legal status of any debt".

23.     Section 1692e(10) of the FDCPA prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

24.     Section 1692f of the FDCPA states, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

### IV.   Defendant MRS's Debt Collection Activities

25.    MRS regularly uses the mails and/or telephone to collect, or attempt to collect, delinquent consumer accounts.

26.    MRS is a "debt collector" as defined by Section 1692a(6) of the FDCPA because it "regularly collects or attempts to collect debts owed or due or asserted to be owed or due another" by and through its use of the United States Postal Service to mail debt collection letters to consumers living within this Juridical District and the United States.

27.    MRS acted as a "debt collector", as this term defined by § 1692a(6), because MRS mailed letters to all three Plaintiffs to collect defaulted consumer.

### IV. The Subject Collection Letters

### A.  MRS's June 10, 2019 Collection Letter to Plaintiff Sanders

28.    Plaintiff Sanders is a "consumer" as defined by Section 1692a(3) of the FDCPA  because MRS regards her as a natural person allegedly obligated to pay a "debt" allegedly owed a "[c]reditor" identified as "National Collegiate Student Loan Trust 2005-2". It is not clear if the identified creditor is the original or current creditor.

29.    The debt that Plaintiff Sanders allegedly owes to National Collegiate Student Loan Trust 2005-2 is a "debt" as this term is defined by Section 1692a(5) of the FDCPA because the debt was incurred for Sanders' personal use. This debt fell into a default status after Ms. Sander suffered financial difficulties.

30.    On or about June 10, 2019, MRS mailed a collection letter to Plaintiff Sanders' address in Lombard, Illinois.

31.    A true and accurate image of the June 10, 2019 collection letter is depicted below:



32.     On information and belief, the June 10, 2019 letter was mailed without an

envelope as the letter was folded and secured with perforated edges that allowed the

letter to be opened.

33.     MRS's June 10, 2019 collection letter identified National Collegiate

Student Loan Trust 2005-2 as the creditor and listed a balance of $40,248.51.

34.     The body June 10, 2019 letter begins by stating:

> We recognize that a possible hardship or pitfall may have prevented
> you from satisfying your obligation. We are presenting three options to
> resolve your balance. We are not obligated to renew this offer.

6

35.     MRS's June 10, 2019 collection letter was and is a "communication" as defined in by Section 1692a(2) of the FDCPA because the Collection Letter conveyed information regarding the Subject Debt.

36.     The June 10, 2019 collection letter identified three payment options.

37.     The first option was a single, one time payment of $21,331.72 that had to be received by MRS by June 24, 2019.

38.     The second option involved three equal payments of $8,049.71, where the first of the three payments had to be received by MRS by June 24, 2019.

39.     The third option involved six equal payments of $4,69.66, where the first of the three payments  had to be received by MRS by June 24, 2019.

40.     As depicted above, the June 10, 2019 collection letter warned Plaintiff, "[w]e ae not obligated to renew these offers."

**B. MRS's January 20, 2020 Collection Letter to Plaintiff Harrell**

41.     The Plaintiff Harrell is a "consumer" as defined by Section 1692a(3) of the FDCPA  because MRS regards her as a natural person allegedly obligated to pay a "debt" allegedly owed to a "[c]reditor" identified as "TD Auto Finance LLC".

42.     The debt that Plaintiff Harrell allegedly owes to TD Auto Finance LLC is a "debt" as this term is defined by Section 1692a(5) of the FDCPA because the debt was incurred for Harrell's personal use.

43.     Ms. Harrell began to fall behind on payments after she was diagnosed with a medical condition where her medical expenses took priority over her car payment. Ms. Harrell tried to work out a refinance with TD Auto. TD Auto refused and the vehicle was repossessed.  It is not clear if TD Auto Finance LLC is now the current creditor.

44.     On or about January 20, 2020, MRS mailed a collection letter to Plaintiff Harrell's address in Jackson, Michigan.

7

45.    The January 20, 2020 letter, was mailed without an envelope as the letter was folded and secured with perforated edges that allowed the letter to be opened.

46.    A true and accurate image of the body of January 20, 2020 letter is depicted below:



47.    MRS's January 20, 2020 letter was and is a "communication" as defined in by Section 1692a(2) of the FDCPA because the Collection Letter conveyed information regarding the Subject Debt.

48.    MRS's January 20, 2020 letter identified TD Auto Finance LLC as the creditor and listed an account balance of $7,122.26

49.    The body January 20, 2020 letter begins by stating:

> We recognize that a possible hardship or pitfall may have prevented you from satisfying your obligation. We are presenting three options to resolve your balance. We are not obligated to renew this offer.

50.    Next, the January 20, 2020 letter identifies three payment options:

8

Option 1:  A monthly payment plan on the full balance of the account.

Option 2:  You pay $2,844.90 in ONE PAYMENT to be resolved in this office on or before 2/02/2020.

Option 3:  You make TWO PAYMENTS of $1,778.07 each. The first payment to be received in this office on or before 02/02/2020 and the second payment on or before 03/01/2020.

51.     As depicted above, the January 20, 2020 collection letter warned Plaintiff, "[w]e ae not obligated to renew these offers."

52.     February 2, 2020, fell on a Sunday.

53.     Even if the January 20, 2020 letter was truly mailed to Plaintiff on January 20, 2020, and it was received within three or four days, Plaintiff Harrell would have had approximately one week to secure and mail the proposed discount payments to MRS.

54.     Plaintiff Harrell became distressed and anxious when she read the short payment deadlines.

55.     Plaintiff has been unable to resolve her debt with MRS for a dollar figure she can afford.

**C. MRS's January 4, 2020 Collection Letter to Plaintiff Macaraeg**

56.     The Plaintiff Macaraeg is a "consumer" as defined by Section 1692a(3) of the FDCPA because MRS regards her as a natural person allegedly obligated to pay a "debt" allegedly owed to a "[c]reditor" identified as "JPMorgan Chase Bank N.A.".

57.     The debt that Plaintiff Macaraeg allegedly owes to JPMorgan Chase Bank N.A. is a "debt" as this term is defined by Section 1692a(5) of the FDCPA because the debt was incurred for Macaraeg's personal use.

58.     On or about January 4, 2020, MRS mailed a collection letter to Plaintiff Macaraeg's address in Portville, California.

59.     A true and accurate image of the January 4, 2020 letter is depicted below:

9



60.     MRS's January 4, 2020 letter was and is a "communication" as defined in
by Section 1692a(2) of the FDCPA because the Collection Letter conveyed information
regarding the Subject Debt.

61.     MRS's June 10, 2019 letter identified JPMorgan Chase N.A. as the creditor and listed a balance of $1,250.

62.     MRS's January 4, 2020 letter was the first letter that MRS sent to Plaintiff Macaraeg.

63.     The body January 4, 2020 letter begins by stating:

> The above referenced creditor has placed your account with our office for collection. We recognize that sometimes circumstances or events can make it difficult to satisfy your financial obligations. Resolving an overdue debt is never easy. Often the hardest part is taking the first step. We are ready to assist you to find a solution that is both fair and reasonable by presenting two payment options that will enable you to resolve your balance with JPMorgan Chase Bank N.A.:

64.     Next, the January 4, 2020 letter describes the two payment options:

| SINGLE PAYMENT | MONTHLY PAYMENTS PLAN |
|:---:|:---:|
| Make a ONE-TIME payment of $625.43 by 02/20/2020 to resolve your account | Can't make a settlement right now? We can work with you on a payment plan for the full balance of your account. |

65.     Below the payment options was the following phrase:

> If you need additional time to respond to these offers, please contact us.
> We are not obligated to renew these offers.

66.     Because MRS's January 4, 2020 letter was the first letter that MRS sent to Plaintiff Macaraeg, the letter contained certain disclosures mandated by Section 1692g of the FDCPA that are depicted below:

**IMPORTANT CONSUMER INFORMATION**
Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

67.     The thirty (30) time-period by which Plaintiff would be required to seek validation of the debt as required by 1692g(a)(3) of the FDCPA would be triggered from Plaintiff's receipt of the January 4, 2020 collection letter.  *See Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997) (consumer triggers verification rights by mailing out written notice of dispute on thirtieth day after receiving validation notice).

68.     Based upon the due date of the one-time discounted payment option, if a consumer sought verification at or near the end of the statutorily mandated 30-day validation period, it would be nearly impossible for  MRS to provide verification in time for the consumer to tender payment in acceptance.

**V.    of Relevant FDCPA Court Opinions and MRS's Conduct**

69.     In *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769 (7th Cir. 2007), the Seventh Circuit created the above quoted "safe harbor" language for debt collectors to use to protect themselves when conveying time-sensitive discounted settlement offers to consumers.

70.     According to the court, "[t]he concern is that unsophisticated consumers may think that if they don't pay by the deadline, they will have no further chance to settle their debt for less than the full amount." *Evory*, 505 F.3d at 775.

71.     In the case of *Preston v. Midland Credit Management, Inc.*, (7th Cir. 2020), Judge Illana Rovner issued a concurring opinion that cast doubt on the continued use of the phrase "[w]e are not obligated to renew this offer".

72.     As correctly observed Judge Rovner:

> I have doubts that this [safe harbor] language actually accommodates the competing goals that the *Evory* court identified. In fact, the current safe-harbor language emphasizes and amplifies the creditor's message that it is a time-limited offer. The language is no different from the creditors' language of "limited time offer" or a "time sensitive matter," or "act now," and reinforces the idea that if the debtor does not act immediately, she may lose the opportunity

to do so forever. As such, I propose that this circuit reconsider whether the language of the safe-harbor provision announced in *Evory* realistically honors the goals that the opinion sought. Adding the following two words to the language, undoubtedly would do so more accurately: "We may, but are not obligated to, renew this offer."

\* \* \*

Preston did not raise the question of the safe-harbor language in this case, and therefore this is not the appropriate time to reconsider it, but should it emerge in a future case, I urge the court to reexamine whether this safe-harbor language achieves the intended balance between the interests of creditors and debtors.

*Preston*, 948 F.3d at 778.

73.     As depicted below, MRS's practices involve sending highly discounted settlement offers to consumer with very short deadlines to induce consumers by including the warning,  "[w]e are not obligated to renew this offer" and "[w]e are not obligated to renew these offers" to impact the how Plaintiffs read and understood the details of offers in order to manipulate and/or urge consumers like the Plaintiffs to accept the discounted settlement offers.

74.     MRS's conduct in drafting the Subject Collection Letters to increase the acceptance of the discounted settlement offers by making the offers appear to be time-sensitive and not subject to renewal, was undertaken to increase profits for MRS.

75.     In acting in this manner, MRS has violated Sections 1692e, e(2)(A), e(10) and f of the FDCPA.

76.     For example, as discussed below, MRS's use the phrase "[w]e are not obligated to renew these offers" constitutes a "false, deceptive, or misleading representation or means in connection with the collection of [a] debt."

77.     Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See, e.g., Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164, * (N.D. Ill. Aug.

13

19, 2019); *Richardson v. Diversified Consultants*, 2019 U.S. Dist. LEXIS 118786, *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). *See also Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019).

78.     Misrepresentations may cause consumers to make incorrect decisions about their finances and which creditors to pay (before paying another creditor).

79.     Plaintiffs and other consumers like them who received a similar form letter from MRS where the letters contained time-sensitive offers and the phrases "[w]e are not obligated to renew these offers" or "[w]e are not obligated to renew this offer" suffered real harm resulting from MRS's FDCPA violations because the complained of wording resulted in a false sense of urgency relative the contents of and the instructions contained within each collection letter.

14

80.    Based upon common collection industry practices and MRS's own practices, MRS has mailed more than forty (40) form collection letters to postal addresses in the State of Illinois in the past year where the form of the collection letter was identical to the letters received by the named Plaintiffs.

81.    Based upon common collection industry practices and MRS's own practices, MRS has mailed more than forty (40) form collection letters to postal addresses in the State of California in the past year where the form of the collection letter was identical to the letters received by the named Plaintiffs.

82.    Based upon common collection industry practices and MRS's own practices, MRS has mailed more than forty (40) form collection letters to postal addresses in the State of Michigan in the past year where the form of the collection letter was identical to the letters received by the named Plaintiffs.

83.    There are common questions of fact between Plaintiff's claims and those of the class because MRS sent form collection letters to Plaintiffs and the putative class member.

84.    There are common questions of law involving Plaintiffs' claims and those of the class with regard to whether MRS violated Sections 1692e, e(2)(A), e(10) and f of the FDCPA,

85.    The claims brought by Plaintiffs are typical of the claims that are being brought on behalf of the proposed class members because the claims are related to form letters used by MRS to collect consumer debts.

86.    Plaintiffs will fairly and adequately protect the interests of the proposed class members.

87.    Plaintiffs' counsel will fairly and adequately protect the interests of the proposed class members. Mr. Vlahakis is an experienced consumer class action litigator.

For example, he was appointed to the Steering Committee in a nationwide class action against, *In Re: Apple Inc. Device Performance Litigation*, 18-md-02827 (N.D. Cal.) (Dkt. Entry no. 99). After grueling litigation, the parties proposed a $310 to $500 million dollar settlement to the court and obtained preliminary approval of the settlement on on May 15, 2020 (Dkts. 415-16, 420, 429). Further, as a partner of Hinshaw & Culbertson, LLP, Mr. Vlahakis has defended over a hundred consumer-based claims since 1998. As a defense attorney in the below cases, Mr. Vlahakis recognizes the defenses inherent in class actions. *See, Jamison v. First Credit Servs.*, 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013) (defeating a TCPA certification motion); *Pesce v. First Credit Servs.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012)(decertifying a previously certified class action).

88.     As a former defense attorney, Mr. Vlahakis has worked with opposing counsel to obtain court approval of various class action settlements. *See, e.g., Prater v. Medicredit, Inc.*, 2014-cv-0159, 2015 U.S. Dist. LEXIS 167215 (E.D. Mo. Dec. 7, 2015) ($6.3 million dollar TCPA based automated dialing system wrong party settlement). Further, Mr. Vlahakis, on behalf of Crown Mortgage Company, obtained favorable declaratory relief before the Federal Communication Commission ("FCC") relative to a TCPA junk facsimile-based cause of action. See, FCC's Order of October 30, 2014, FCC 14-164, in CG Docket Nos. 02-278 and 05-338. The FCC's Order is located at https://docs.fcc.gov/public/attachments/FCC-14-164A1.pdf+&cd=1&hl=en&ct=clnk&gl=us

89.     As counsel for Neal Preston, the undersigned obtained partial reversal of the district court's 12(b)(6) dismissal of the aforementioned case of *Preston v. Midland.*

90.     Lastly, Mr. Vlahakis' firm has the available resources to provide notice to class members and to litigate this case to trial.

91.    Questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

92.    Because of the expense involved in litigating an individual FDCPA claim, it is unlikely that any putative class member's interests in individually controlling the prosecution of an FDCPA lawsuit would override the efficiency of litigating the illegality of Defendants' conduct in the context of a class action.

93.    Because MRS utilized a standard form letter and the identity of the putative class members is readily ascertainable, there are no likely difficulties in managing this case as a putative class action.

94.    A class action is a superior method of litigating the legality of Defendants' conduct, and a class action is manageable.

## VIII. Causes of Action

**Count I.    The Use of the Phrase "[w]e are not obligated to renew these offers" in conjunction with the short payment deadlines in relationship to the mailing dates of the collection letters violates Section 1692e of the FDCPA**

95.    Plaintiffs KAREN SANDERS, JESSICA MACARAEG and JACQUELYN S. HARRELL restate and incorporates the above Paragraphs as if fully set forth herein.

96.    Section 1692e of the FDCPA states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

97.    By using the safe-harbor language, "[w]e are not obligated to renew these offers", the Subject Collection Letters violate Section 1692e of the FDCPA.

98.     MRS's use the phrase "[w]e are not obligated to renew these offers" constitutes a "false, deceptive, or misleading representation or means in connection with the collection of [a] debt."

99.     Each collection letter contained very short payment deadlines in relation to the settlement offers conveyed.

**WHEREFORE**, Plaintiffs KAREN SANDERS, JESSICA MACARAEG and JACQUELYN S. HARRELL respectfully requests that this Honorable Court:

> a.  Declare that the practices complained of above are unlawful and violate Section 1692e of the FDCPA;
> b.  Award Plaintiffs statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;
> c.  Award Class Members statutory damages; and
> d.  Award the Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k.

**Count II.    The Use of the Phrase "[w]e are not obligated to renew these offers" in conjunction with the short payment deadlines in relationship to the mailing dates of the collection letters violates Section 1692e(2)(A) of the FDCPA**

100.    Plaintiffs KAREN SANDERS, JESSICA MACARAEG and JACQUELYN S. HARRELL restate and incorporates the above Paragraphs as if fully set forth herein.

101.    Section 1692e(2)(A) of the FDCPA prohibits "[t]he false representation of...the character, amount, or legal status of any debt".

102.    By using the safe-harbor language, "[w]e are not obligated to renew these offers", the Subject Collection Letters violate Section 1692e(2)(A) of the FDCPA.

103.    MRS's use the phrase "[w]e are not obligated to renew these offers" constitutes "false representation of...the character, amount, or legal status of" of the Subject Debts.

104.    Each collection letter contained very short payment deadlines in relation to the settlement offers conveyed.

**WHEREFORE**, Plaintiffs KAREN SANDERS, JESSICA MACARAEG and JACQUELYN S. HARRELL respectfully requests that this Honorable Court:

a.    Declare that the practices complained of above are unlawful and violate Section 1692e(2)(A) the FDCPA;

b.    Award Plaintiffs statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

c.    Award Class Members statutory damages; and

d.    Award the Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k.

**Count III.    The Use of the Phrase "[w]e are not obligated to renew these offers" in conjunction with the short payment deadlines in relationship to the mailing dates of the collection letters violates Section 1692ee(10) of the FDCPA**

105.    Plaintiffs KAREN SANDERS, JESSICA MACARAEG and JACQUELYN S. HARRELL restate and incorporates the above Paragraphs as if fully set forth herein.

106.    Section 1692e(10) of the FDCPA prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

107.    By using the safe-harbor language, "[w]e are not obligated to renew these offers", the Subject Collection Letters violate Section 1692e(10) of the FDCPA.

108.    MRS's use the phrase "[w]e are not obligated to renew these offers" constitutes a false representation or deceptive means to collect or attempt to collect the Subject Debts.

109.    Each collection letter contained very short payment deadlines in relation to the settlement offers conveyed.

19

**WHEREFORE**, Plaintiffs KAREN SANDERS, JESSICA MACARAEG and JACQUELYN S. HARRELL respectfully requests that this Honorable Court:

    a. Declare that the practices complained of above are unlawful and violate Section 1692e(10) of the FDCPA;

    b. Award Plaintiffs statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

    c. Award Class Members statutory damages; and

    d. Award the Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k.

**Count IV.** **The Use of the Phrase "[w]e are not obligated to renew these offers" in conjunction with the short payment deadlines in relationship to the mailing dates of the collection letters violates Section 1692ef of the FDCPA**

110. Plaintiffs KAREN SANDERS, JESSICA MACARAEG and JACQUELYN S. HARRELL restate and incorporates the above Paragraphs as if fully set forth herein.

111. Section 1692f of the FDCPA states, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

112. By using the safe-harbor language, "[w]e are not obligated to renew these offers", the Subject Collection Letters violate Section 1692f of the FDCPA.

113. MRS's use the phrase "[w]e are not obligated to renew these offers" constitutes and unfair means to collect or attempt to collect the Subject Debts.

114. Each collection letter contained very short payment deadlines in relation to the settlement offers conveyed.

**WHEREFORE**, Plaintiffs KAREN SANDERS, JESSICA MACARAEG and JACQUELYN S. HARRELL respectfully requests that this Honorable Court:

    a. Declare that the practices complained of above are unlawful and violate Section 1692f of the FDCPA;

b. Award Plaintiffs statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

c. Award Class Members statutory damages; and

d. Award the Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k.

## VI.    Class Definitions

115.    Plaintiffs KAREN SANDERS, JESSICA MACARAEG and JACQUELYN S. HARRELL restates and incorporates the above Paragraphs as if fully set forth herein.

116.    Plaintiff Sanders intends to represent a class of Illinois residents who were sent a similar form letter as the one depicted in the Complaint where MRS attempted to collect a debt on behalf of National Collegiate Student Loan Trust 2005-2, and where the letters were sent within one year of the filing of this Civil Action until MRS modifies its letter.

117.    Plaintiff Harrell intends to represent a class of Michigan residents who were sent a similar form letter as the one depicted in the Complaint where MRS attempted to collect a debt on behalf of TD Auto Finance LLC, and where the letters were sent within one year of the filing of this Civil Action until MRS modifies its letter.

118.    Plaintiff Macaraeg intends to represent a class of California residents who were sent a similar form letter as the one depicted in this Complaint where MRS attempted to collect a debt on behalf of JPMorgan Chase Bank N.A., and where the letters were sent within one year of the filing of this Civil Action until MRS modifies its letter.

**Plaintiff demands trial by jury.**

Respectfully Submitted,

Date: 5/30/2020                     /s/ James C. Vlahakis
                                    James C. Vlahakis

                                    *Counsel for Plaintiffs*
                                    *KAREN SANDERS, JESSICA*
                                    *MACARAEG and JACQUELYN S.*
                                    *HARRELL*

                                    Sulaiman Law Group, Ltd
                                    2500 S Highland Ave,
                                    Suite 200
                                    Lombard, IL 60148
                                    Telephone: (630) 575-8181
                                    jvlahakis@sulaimanlaw.com